```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| JEFFERY M. HOLT, | |
| Plaintiff, | CIVIL NO. 05-5694(NLH) |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | OPINION |
| Defendant. | |

**APPEARANCES:**

Jeffery M. Holt
32 Park Circle
Cherry Hill, NJ 08034-2614

    Pro Se

Christopher J. Christie
United States Attorney
    By:  Andreea L. Lechleitner, Esquire
        Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278

    Attorney for Defendant

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration, denying the application of Plaintiff for Disability Insurance Benefits and Supplemental Security Income ("Social Security benefits") under Title II and Title XVI of the Social Security Act.  42 U.S.C. § 401, et seq.

The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled between March 2, 2001, the date of Plaintiff's alleged disability, and September 31, 2003, the date that his insurance for disability benefits expired ("relevant period"). For the reasons stated below, this Court affirms the decision of the ALJ.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

After a year and four months of employment with American Eagle Express, Inc. (R. at 257), Plaintiff, Jeffrey M. Holt, was terminated from his job as a truck dispatcher in March 2000. He claims that he was terminated because he went to the emergency room with his wife who had just been in an accident (R. at 258).

On August 26, 2002, Plaintiff filed an application for Social Security benefits (R. at 51) alleging that his disability began in March 2001, the same month that his unemployment benefits were terminated (R. at 259). In his disability report, Plaintiff claimed that he was unable to work because of illnesses such as congestive heart failure, a liver condition, pancreatic disease, an enlarged spleen and general anxiety (R. at 70). Plaintiff's application was denied both initially and on reconsideration (R. at 12, 34-35), and Plaintiff timely requested a hearing before an ALJ (R. at 36). This hearing took place on July 19, 2004 (R. at 249). After reviewing all of the evidence

*de novo*, the ALJ found that Plaintiff was not disabled during the relevant period (R. at 9-18).  Plaintiff now seeks this Court's review.

**II.  DISCUSSION**

    **A.  Standard of Review**

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits.  <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001); <u>Sykes v. Apfel</u>, 228 F.3d 259, 262 (3d Cir. 2000); <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)(quoting <u>Consolidated Edison Co. V. NLRB</u>, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Id.</u>  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See <u>Brown v. Bowen</u>, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See <u>Daring v. Heckler</u>, 727 F.2d 64, 70 (3d Cir. 1984).

3

"[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the fact finder, must consider and evaluate the medical

4

evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 Fed. Appx. 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  Moreover, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.  Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical and/or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience,

engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B)(emphasis added).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis. See 20 C.F.R. § 404.1520. This five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy. If he is incapable, he will be found "disabled." If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

6

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C.   Analysis**

The sole issue Plaintiff raises on appeal is whether substantial evidence supports the Commissioner's decision that Plaintiff was not disabled during the relevant period.[1]

---

[1] Although not a primary issue before this Court on appeal, Plaintiff's brief also alleges that the ALJ acted dishonestly in deciding this case. Plaintiff claims that the ALJ tampered with portions of the hearing transcript, lied in his opinion about Plaintiff's testimony, and based his decision on personal feelings rather than on the law. He "**firmly believe**[s] that an injustice has been done by this Judge" (Pet. Br. at 2) (emphasis in original). These allegations appear to be unfounded. There is no evidence in the record that indicates dishonesty on the part of the ALJ. The hearing was tape-recorded by the ALJ's assistant (R. at 249-50), and both Plaintiff and his attorney were present (R. at 247). Furthermore, there is nothing about the transcript that would indicate that portions had been deleted or edited.

7

Following the five-step sequential analysis, the ALJ concluded that the severity of combined exertional and non-exertional functional limitations that Plaintiff suffered from rendered him "disabled" (R. at 14, 17). The ALJ also found, however, that Plaintiff's inability to perform jobs was related, "in a material way," from his drug and alcohol abuse (R. at 13). Based 42 U.S.C. §§ 423(d)(2)(C) and 1382c(a)(3)(J), which state that individuals will not be eligible for, or entitled to, disability benefits where drug addiction and/or alcoholism is a contributing factor material to the determination that the individual is disabled, the ALJ concluded that because Plaintiff's medically determinable impairments alone, minus the alcohol, would not have prevented him from performing his prior jobs during the relevant period, Plaintiff was not "disabled" for the purposes of the Social Security Act (R. at 17-18).

Plaintiff, who is proceeding *pro se*, contests the findings of the ALJ. Even though Plaintiff challenges the ALJ's decision paragraph by paragraph, it is unclear which specific findings of the ALJ Plaintiff does not believe are supported by substantial evidence. Thus, the Court will consider all the evidence presented to the ALJ to determine whether the ALJ's decision was reasonable.

In performing the five-step sequential analysis, the ALJ concluded that Plaintiff satisfied Step One because he was not

8

engaged in substantial gainful activity during the relevant period (R. at 14). The Social Security Regulations define substantial work activity as work that involves physical or mental activities. 20 C.F.R. § 404.1520. Work can still be considered substantial even if it is on a part-time basis and responsibilities or compensation are lower than with previous employment. Id. Gainful activity is simply any work done for pay or profit. Id. In the transcript from the hearing before the ALJ on July 19, 2004, Plaintiff admitted that, since March 2001, he had worked for four months delivering newspapers for the Courier Post, but had to quit due to pain in his legs (R. at 223, 262-63), and "did a tiny bit of work for Wawa" (R. at 255). Even though Plaintiff had brief periods of employment following the alleged onset of disability, the ALJ determined, based on the Detailed Earnings Query report from 1980-2003 (R. at 55-60), that this did not amount to substantial gainful activity during the relevant period (R. at 17).

    With regard to Steps Two and Three, although Plaintiff's medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 (Step Three)(R. at 17), the ALJ determined that Plaintiffs' impairments were "severe" (Step Two)(R. at 17). It is the job of the ALJ to "analyze the cumulative effect of all the [Plaintiff's] impairments in determining whether []he is

9

capable of performing work and is not disabled." Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).

With regard to Step Four, the ALJ determined that because Plaintiff continued to abuse alcohol through September 2003, he was incapable of performing his past relevant work (R. at 17). The ALJ found that Plaintiff's mental and physical limitations "precluded him from completing a normal workday and work week, performing at a consistent pace, sustaining a routine, and interacting acceptably with coworkers and the public" (R. at 17). With regard to Step Five, the ALJ concluded that it was not reasonable to believe that there were a significant number of jobs in the national economy that Plaintiff had the capacity to perform on a consistent basis throughout the relevant period (R. at 17). The ALJ found that the "combination of exertional and non-exertional functional limitations . . . support[ed] a finding of 'disabled'" (R. at 15).

These findings were based on examination of Plaintiff by his treating physician (R. at 150, 221, 214), an internist (R. at 199-202), State agency physicians ( R. at 160-67; 189), and a psychologist (R. at 168-71) between March 2001 and October 2003. Although the prognoses over these three years had varied in response to Plaintiff's level of alcohol consumption (R. at 150), the medical records indicated that Plaintiff had generally been found unable to work (R. at 195). The ALJ also based his

10

decision on the fact that Plaintiff's cirrhosis of the liver, personality and anxiety disorders, and alcoholism, when combined, "significantly limit[ed] [his] physical [and] mental ability to do basic work activities" (R. at 14, citing 20 C.F.R. § 404.1520).  Further, the ALJ considered that Plaintiff's prognosis, both mentally and physically, would remain poor unless he quit drinking and was rehabilitated (R. at 189, 210, 214).

Even though the ALJ found Plaintiff "disabled" under the five-step sequential analysis, the ALJ determined that Plaintiff would not have been "disabled," and would have been able to perform his past relevant work, as well as other sedentary jobs, had he taken his prescribed medication and discontinued use of alcohol (R. at 17-18).  Based on the medical evidence, the ALJ determined that if Plaintiff had stopped drinking, he would have been able to "maintain attention, concentration, persistence, and pace on a sustained basis; understand, remember and carry out detailed instructions; interact appropriately with the public and supervisors; and complete a normal workday and work week" (R. at 16).

The statutes and regulations support the ALJ's consideration of Plaintiff's use of alcohol.  Both 42 U.S.C. §§ 423(d)(2)(C) and 1382c(a)(3)(J) state that where an individual is suffering from drug or alcohol addiction, "[that] individual shall not be considered disabled . . . if alcoholism and drug addiction would

11

. . . be a contributing factor material to the Commissioner's determination that the individual is disabled." Further, the regulations state that where alcohol or drug abuse is a material factor contributing to the alleged disability, the ALJ's determination will turn on whether the claimant would still be considered "disabled" if he or she discontinued using drugs or alcohol. 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). In other words, Plaintiff's disabilities must exist "independent of [his] . . . alcoholism" in order for him to be eligible to receive Disability Insurance Benefits. 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).

The ALJ found that if Plaintiff discontinued his substance abuse, he would retain the residual functional capacity to perform his past relevant work as a truck dispatcher or hotel reservation clerk, as well as other sedentary jobs available in the national economy (R. at 16-17). The medical records support this conclusion. They indicate that during the initial five month period that Plaintiff quit drinking, his medical condition improved (R. at 221). After examining Plaintiff in March 2001, Dr. Rykiel reported that he "[was] doing better . . . his weight ha[d] gone up . . . he [wa]s eating better . . . [and] there [wa]s no jaundice" (Id.).

Plaintiff, however, was unable to maintain permanent sobriety. He made no efforts to join any organization, club or

group that could potentially aid in his rehabilitation (R. at 275). As soon as Plaintiff started drinking again, his health correspondingly began to deteriorate. In November 2001 Plaintiff was examined by an internist, Dr. Gani, who diagnosed Plaintiff with anxiety, coupled with secondary problems of alcoholism, chronic pancreatitis and possible cirrhosis of the liver (R. at 199-200). He opined that Plaintiff was incapable of working, primarily due to his psychological limitations (Id.). By the time Dr. Gani reexamined Plaintiff three months later, one of his primary diagnoses was recorded as alcoholism (R. at 203). In October 2002, Dr. Rykiel again examined Plaintiff; this time he reported that his prognosis was poor and would progressively worsen unless he was rehabilitated (R. at 214). He acknowledged that Plaintiff was a "chronic alcoholic" and suffered from a number of alcohol-related medical impairments such as alcoholic liver disease and alcoholic withdrawal seizures among others (Id.). When Plaintiff underwent an evaluation in January 2003 it was recommended that he undergo psychiatric care; however, his mental impairments were only described as moderate (R. at 170). Even then, Plaintiff failed to obtain the recommended psychiatric treatment over the course of the relevant period (R. at 272).

In April 2003, Dr. Rykiel made an assessment of Plaintiff's abilities and limitations; he concluded that although there was a likelihood that Plaintiff's condition would increasingly

13

deteriorate if placed under the stresses of a work environment, he also noted that this potential deterioration would be contingent upon Plaintiff's continued alcohol consumption (R. at 210).

The medical reports of Dr. Feman, Dr. Ferrell and Dr. Mata all indicate that Plaintiff was not significantly limited by his psychologically based symptoms and would be able to perform sedentary work if he stopped drinking.  Dr. Ferrell's report indicates that aside from his psychological impairments, Plaintiff's medical conditions stemmed from "substance addiction disorders" (R. at 173).  Dr. Rykiel's report indicates that he believed Plaintiff would be able to "occasionally" lift or carry as much as twenty pounds and sit throughout the course of an eight hour day intermittently for half hour periods of time (R. at 208).  For the most part, Dr. Rykiel noted only mild mental impairments of Plaintiff, and a moderate difficulty in concentrating for extended periods of time (R. at 209-10).

These capabilities are not entirely inconsistent with the recognized requirements for being able to perform sedentary work.  The ALJ noted that sedentary work generally involves "lifting and/or carrying weights up to [ten] pounds; standing and walking for about [two] hours in a typical [eight]-hour workday; and sitting for up to [six] hours" (R. at 16).  In October and November of 2003, it again appeared as though Plaintiff was

14

making efforts to give up alcohol; correspondingly, it was around this time that Plaintiff was able to work as a delivery man for the Courier Post, and that Dr. Rykiel reported that the plaintiff "look[ed] much better" (R. at 227).

It was not unreasonable for the ALJ to conclude, based on the medical evidence and Plaintiff's perceived lack of credibility, that Plaintiff was in fact capable of performing sedentary work.  "[I]t is well within the discretion of the Commissioner to evaluate the credibility of the plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence regarding the true extent of such symptomatology."  LaCorte v. Bowen, 678 F. Supp. 80, 83 (D.N.J. 1988); Brown v. Schweiker, 562 F. Supp. 284, 287 (E.D. Pa. 1983).  The ALJ considered Plaintiff's subjective allegations of pain and functional limitations; however, this alone cannot be the basis for a finding of disability where the objective medical evidence does not support the additional alleged symptoms.  42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(b); SSR 96-7p; Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999); Green v. Schweiker, 749 F.2d 1066, 1069-70 (3d Cir. 1984)).  Not only did Plaintiff fail to seek psychological treatment at any point during the relevant period (R. at 169), he never underwent physical therapy, chiropractic care, surgeries or other pain management for his back and legs (R. at 270-72).  Furthermore,

15

although Plaintiff claims that he had to quit his job as a newspaper deliveryman due to the pain in his legs, and is unable to perform even sedentary work, he admits to being capable of performing a number of daily activities including shopping, preparing meals, taking out the dogs and the garbage (R. at 274). He uses public transportation to go to the library (R. at 106, 275) and recently vacationed in Florida with his wife (R. at 276-77).

Based on the entirety of the evidence, the ALJ found that "absent alcoholism and provided he took his prescribed medication" Plaintiff had the ability to "maintain attention, concentration, persistence and pace on a sustained basis; understand, remember and carry out detailed instructions; interact appropriately with the public and supervisors and complete a normal workday and work week" (R. at 17). It was, thus, not unreasonable for the ALJ to conclude that Plaintiff was not under a "disability," as defined by the Social Security Act, during the relevant period.

### III. CONCLUSION

For the reasons expressed above, the decision of the ALJ is affirmed. An accompanying Order will be issued.


Date: September 28, 2007        s/ Noel L. Hillman
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.